# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**MARIBEL CEDEÑO NIEVES,**

**Plaintiff,**

**v.**

**AEROSTAR AIRPORT HOLDINGS LLC, et al.,**

**Defendants.**

**CIVIL NO. 14-1484 (GAG)**

## OPINION AND ORDER

Maribel Cedeño Nieves ("Plaintiff") invokes this Court's diversity jurisdiction to bring a negligence suit against Aerostar Airport Holdings LLC and Aerostar's insurance company, AIG Insurance Company-Puerto Rico, Inc. (collectively, "Defendants"). (Docket No. 27.) Plaintiff alleges that she fell while stepping onto an electric escalator in the Luis Muñoz Marin International Airport ("the Airport"). The direct cause of Plaintiff's fall is undisputed: another female passenger on the escalator fell backwards into Plaintiff. Plaintiff suffered bodily injuries due to her fall. She now seeks to recover damages under Puerto Rico's general tort law statute, Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141 ("Article 1802").

Defendant's motion for summary judgment is currently pending before the Court. (Docket No. 111.) Plaintiff responded, and Defendant replied. (Docket Nos. 116, 127.) Additionally, three evidentiary motions are pending before the Court: Plaintiff's motion *in limine* to disqualify and exclude Defendants' expert (Docket No. 110); Defendants' motion to hold in abeyance Plaintiff's motion *in limine* (Docket No. 115); and Defendants' motion *in limine* to strike and exclude Plaintiff's engineering expert and medical expert (Docket No. 129). For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

**Civil No. 14-1484 (GAG)**

**I.  Preliminary Evidentiary Issues**

Before assessing Defendants' motion for summary judgment, the Court must resolve three pending evidentiary motions.

    a.  <u>Plaintiff's Motion *in Limine* at Docket No. 110 and Defendants' Motion to Hold in Abeyance at Docket No. 115.</u>

Plaintiff moves *in limine* to disqualify and exclude Defendants' expert witness, Alba Cruz Moya. (Docket No. 110.) Rather than responding to Plaintiff's argument on the merits, Defendants request that Plaintiff's motion be held in abeyance until after the resolution of summary judgment. (Docket No. 115.) Neither party has cited evidence from Cruz-Moya to support their arguments for or against summary judgment. (Docket Nos. 111, 112, 116, 117.) Thus, the Court need not consider evidence from Cruz-Moya to address the summary judgment motion and need not decide Plaintiff's motion at this time. See FED R. CIV. P. 56(c)(3). Defendants' motion at Docket No. 115 is **GRANTED**. Plaintiff's motion at Docket No. 110 is **HELD IN ABEYANCE**.

    b.  <u>Defendants' Motion *in Limine* to Strike and Exclude the Sanchez Rebuttal Report and Dr. Lopez-Reymundi Independent Medical Evaluation Report at Docket No. 129.</u>

Defendants move *in limine* to strike and exclude two of Plaintiff's experts: Engineer Alex Sanchez and Dr. Jose Lopez-Reymundi. (Docket No. 129.) Plaintiff opposed this request, and Defendants replied. (Docket Nos. 130, 134.) The Court considers each expert report in turn.

The Sanchez rebuttal report provides a preliminary evaluation the Cruz-Moya report. (Docket No. 113-1.) Defendants' present a laundry list of arguments for exclusion of the Sanchez report. The most pressing problem with the Sanchez report is Plaintiff's failure to timely disclose.

Expert witness evidence "intended solely to contradict or rebut" another party's evidence must be disclosed either "within 30 days after the other party's disclosure or at the time ordered by the Court." FED. R. CIV. P. 26(a)(2)(D). Rule 37 provides sanctions for a party's breach of Rule

2

**Civil No. 14-1484 (GAG)**

26(a)'s mandatory disclosure requirements, requiring preclusion of such material, unless the failure to disclose was substantially justified or harmless.  See FED. R. CIV. P. 37(c)(1).  Defendants disclosed the Cruz Moya report in November 2016.  (Docket No. 129, at 1.)  The discovery deadline in this case was November 18, 2016, with a limited exception for pending depositions in December 2016.  (See Docket Nos. 99, 107.)  However, Plaintiff did not disclose the Sanchez rebuttal report until January 31, 2017—the dispositive motion deadline—and filed a translation the following day.  (Docket Nos. 109; 110-3; 113-1.)  Thus, Plaintiff failed to adhere to the disclosure requirements of Rule 26(a).

Plaintiff's failure to disclose was neither substantially justified nor harmless.  Plaintiff relies on the Sanchez report in opposition to summary judgment, (Docket No. 116, at 5-6), so Plaintiff's failure to timely disclose the report is not harmless.  Plaintiff presents no cogent explanation for the non-disclosure, (Docket No. 130), so the untimeliness is not substantially justified.  Since the Rule 37(c) 'substantially justified or harmless' escape hatch does not apply, Plaintiff's failure to timely disclose warrants exclusion of the Sanchez report.[1]  See, e.g., Lohnes v. Level 3 Commc'n, Inc., 272 F.3d 49, 59-61 (1st Cir. 2001) (affirming district court's exclusion of expert witness evidence for failure to timely disclose).

Defendants also seek to exclude and strike the independent medical examination report from Dr. Lopez-Reymundi.  (Docket No. 129, at 8-9.)  The Lopez-Reymundi report includes Plaintiff's medical history, physical examination, and assessment of impairment.  (Docket No. 116-4.)  The

---

[1] Since the Sanchez report will not be considered as part of the summary judgment record due to its untimely disclosure, the Court need not address the significant Daubert issues the report raises.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) (requiring a preliminary assessment of the relevance and reliability of expert testimony before admission).

3

**Civil No. 14-1484 (GAG)**

Lopez-Reymundi report also contains a section titled "Causation" which reads: "Based on the available information with a reasonable degree of medical certainty there is causal relation of the above diagnoses and the June 22, 2013 incident." Id. at 6. Defendants view this statement as an inadmissible opinion about proximate cause, and argue for exclusion of the entire report on that basis. (Docket No. 129, at 8-9.) However, this statement relates to Plaintiff's injury—not Defendants' legal liability. Whatever the causal connection between Plaintiff's June 22, 2013 fall and her subsequent physical impairments, that connection is distinct from the alleged causal link between Plaintiff's fall and Defendants' alleged breach of the duty of care. Defendants argument to exclude the Lopez-Reymundi report is unconvincing.

Therefore, the Court **GRANTS in part and DENIES in part** Defendants' motion at Docket No. 129. The Sanchez rebuttal report is excluded from the summary judgment record. The Lopez-Reymundi report is included in the summary judgment record.

## II.    Relevant Factual and Procedural Background[2]

On June 22, 2013, Plaintiff flew from Santo Domingo, Dominican Republic to San Juan, Puerto Rico on JetBlue Airlines. (Docket No. 112, ¶ 1.) After the plane touched down in San Juan, Plaintiff disembarked, walked through the jet bridge, and passed through an airport hallway as she approached the U.S. Customs and Border Patrol Checkpoint Area. Id. at ¶ 2. There was an escalator at the end of the hallway, which led to the Checkpoint Area. Id. at ¶ 4. Plaintiff approached the

---

[2] Local Rule 56(c) requires a party opposing summary judgment to "admit, deny or qualify" the facts supporting a summary judgment motion. L. Cv. R. 56(c). Facts that are not admitted must be supported by record citation. Id. Additionally, Local Rule 56(e) provides that facts "shall be deemed admitted unless properly controverted." Id. at 56(e). Plaintiff has not properly controverted any of Defendants' facts; the words "admit" and "deny" do not even appear in Plaintiff's opposing statement of material facts. (See Docket No. 117.) Accordingly, the facts set forth in Defendants' Statement of Uncontested Material Facts at Docket No. 112 are deemed admitted. Where necessary, the Court has looked to the deposition testimony and other admissible evidence for a more complete understanding of the incident.

4

**Civil No. 14-1484 (GAG)**

escalator and noticed another female passenger in front of her. Id. at ¶ 3. In the moment before the incident, the female passenger had stepped onto the escalator and was ascending the escalator with her back to the Plaintiff. Id. at ¶¶ 5-6.

As Plaintiff moved from the escalator base onto the first step of the moving conveyor, the female passenger fell backwards onto Plaintiff. Id. at ¶ 9. Plaintiff did not see the female passenger fall. Id. at ¶ 25. However, Plaintiff estimates the female passenger had ascended approximately three to five steps up the escalator at the moment she fell. (Docket No. 111-8, at 71, 77.) Plaintiff did not observe the position of the female passenger's hands or feet immediately preceding the passenger's fall. (Docket No. 112, ¶¶ 10-15.) When the female passenger made contact with her, Plaintiff fell forward, landing on her knees on the moving escalator conveyor. Id. at ¶ 32. As Plaintiff recalls, the female passenger "fell on those stairs, which caused [Plaintiff's] fall." (Docket No. 111-8, at 96.)

Plaintiff does not know how long she remained on the ground immediately after her fall. Id. at 77. She scraped her knees when she landed on the ground, but did not bleed. (Docket No. 111-11, at 70.) After Plaintiff fell, a male passenger helped her stand up as they continued up the escalator towards the Checkpoint area. Id. at 62-63. The escalator's ascent did not stop when Plaintiff fell. (Docket No. 112, ¶ 33.)

After stepping off the escalator and proceeding to the Checkpoint area, Plaintiff received evaluations from three sets of paramedics. The first paramedic to evaluate Plaintiff determined that she was "fine." (Docket No. 111-11, at 77-78.) Then, Plaintiff went to the JetBlue counter, where second group of paramedics were called. Id. at 90-91. An Aerostar representative arrived later and called a third group of paramedics. Id. at 97. During the three sets of paramedic evaluations, Plaintiff's pain intensified. Id. at 91. Either the second or third paramedic group (it is not clear

5

**Civil No. 14-1484 (GAG)**

which) wrote a report assessing Plaintiff's condition. (Docket No. 111-12, at 104-06.) Plaintiff signed the report, indicating that she declined transport by the paramedics to the hospital. Id.

That same day, Plaintiff's sister drove her to the emergency room, where she received x-rays on her shoulders, hips, and legs. (Docket No. 116-4, at 2.) The x-rays were negative for any fractures. Id. Since then, Plaintiff has seen numerous doctors for her persistent back and leg pain, which causes her difficulty walking and engaging in physical activity. Id. at 3. Plaintiff was also seen by Dr. Lopez-Reymundi. Id. at 1. Dr. Lopez-Reymundi performed an independent medical evaluation to assess Plaintiff's medical condition. Id. at 6. Dr. Lopez-Reymundi diagnosed Plaintiff with strains of her cervical and lumbar spine, both knees, and left ankle. Id.

Plaintiff filed suit in June 2014 and subsequently amended her complaint on December 8, 2014. (Docket No. 27.) Defendants moved to dismiss the amended complaint, which the Court denied because Plaintiff alleged a plausible claim that an improperly lit escalator could constitute a dangerous condition of which Defendants knew or should have known. Cedeño Nieves v. Aerostar Airport Holdings LLC, No. 14-1484, slip op. at 2-3 (D.P.R. Jan 9, 2015).

Following discovery, Defendants moved for summary judgment. (Docket No. 111.) Defendants argue the negligence claim must fail because Plaintiff has not established facts sufficient for a reasonable jury to find that (i) Defendants breached the duty of care or that (ii) any alleged breach was the proximate cause of Plaintiff's injuries. Id. at 1-2, 6-8, 10. Plaintiff responds that this case should proceed before a jury because, even though the female passenger's fall caused Plaintiff's fall, the escalator area was improperly illuminated, lacking in warning signs and other safety measures, and confusing. (Docket No. 116, at 4-5.)

6

### III. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The movant bears the initial burden of demonstrating the lack of evidence to support the nonmovant's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant may establish a fact is genuinely in dispute by citing evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine factual issue remains, the resolution of which could affect the outcome of the case, then summary judgment must be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

At summary judgment, the Court views the evidence in the light most favorable to the nonmovant and resolves all reasonable inferences in the nonmovant's favor. Id. at 255. The Court does not make credibility determinations or weigh the evidence. Id. However, summary judgment may be appropriate if the nonmovant's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## IV. Discussion

The substantive law of Puerto Rico governs liability in this diversity suit. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Cason v. P.R. Elec. Power Auth., 770 F.3d 971, 974 (1st Cir. 2014). Plaintiff brings suit under Article 1802, which imposes tort liability on any person who, by act or omission, causes damage to another through fault or negligence. P.R. LAWS ANN. tit. 31, § 5141. To establish negligence, a plaintiff must show: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty (i.e. defendant was negligent); (3) plaintiff suffered injury; and (4) a sufficient causal nexus between defendant's breach of the duty of care and plaintiff's injury (i.e. proximate causation). Nieves-Romero v. United States, 715 F.3d 375, 378-79 (1st Cir. 2013) (citing Sociedad de Gananciales v. González Padin Co., 17 P.R. Offic. Trans. 111, 125, 117 P.R. Dec. 94, 106 (P.R. 1986)). The foreseeability of the injury is central to the elements of both breach of duty and proximate cause. Calderon-Ortega v. United States, 753 F.3d 250, 252-53 (1st Cir. 2014); see also Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987) (as in common law jurisdictions, "foreseeability is the touchstone of extracontracual liability" in Puerto Rico) (citation omitted).

### a. Duty of Care

The first element of negligence is clear: "one who operates a business for profit undeniably owes a duty of reasonable care to business invitees." Calderon-Ortega, 753 F.3d at 252 (citing Cotto v. Consol. Mut. Ins. Co., 16 P.R. Offic. Trans. 786, 793, 116 P.R. Dec. 644 (P.R. 1985)). Defendants, as the operator of the Airport premises, owed a duty of reasonable care to individuals on the premises, including those using the electric escalator.

### b. Breach of the Duty of Care

The second element of negligence, breach of the duty of care, poses a far greater obstacle to Plaintiff's case. Generally, a person or entity breaches the duty of care by creating a reasonably

foreseeable risk of harm.  Vazquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007).  The foreseeability aspect of breach relates to defendant's knowledge of the dangerous condition, whether actual (defendant knew) or constructive (defendant should have known). Calderon-Ortega, 753 F.3d at 252-53; Vazquez-Filippetti, 504 F.3d at 50; Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 51 (1st Cir. 1997).  In premises liability cases, foreseeability is critical because the law does not require business owners to protect patrons from all possible harms; businesses are not the absolute insurers of their patrons' safety.  Cotto, 16 P.R. Offic. Trans. at 793-94, 116 P.R. Dec. 664; see also Mas v. United States, 984 F.2d 527, 530 (1st Cir. 1993) (reviewing Puerto Rico Supreme Court precedent and holding that Article 1802 negligence requires an affirmative showing of defendant's "actual or constructive knowledge of a dangerous condition").

Puerto Rico law recognizes two distinct types of breach in premises liability cases: negligent maintenance and negligent design.  See, e.g., Vazquez-Filippetti, 504 F.3d at 49-51.  In a negligent maintenance case, breach of the duty of care arises from defendant's lack of upkeep on the premises. For instance, defendant failed to mop up a spill or replace burned-out lightbulbs.  In a negligent design case, by contrast, breach of the duty of care arises from defendant's failure to create a safe environment in the first instance.  For example, defendant's property had flaws such as excessively steep stairs or a balcony with no guardrail.  The danger in these cases—rather than arising from a lack of upkeep—arises from the intended design.

Plaintiff does not specify a theory of Defendants' alleged breach, but the crux of Plaintiff's allegation is that the escalator area was dark, confusing, and without proper signs or safety measures.[3]  (Docket 116, at 4.)  Presumably, darkness could be a result of negligent maintenance (if

---

[3] Plaintiff hints at a failure to warn theory based on the allegation that the escalator area lacked proper signs or safety measures.  However, the record belies this undeveloped allegation since Plaintiff has not alleged

9

**Civil No. 14-1484 (GAG)**

Defendants failed to replace burnt out light bulbs) or negligent design (if Defendants constructed the premises without sufficient lighting). Since Plaintiff has not indicated whether the darkness was due to faulty maintenance or design, the Court will consider each theory of breach.

      i. <u>Negligent Maintenance</u>

For claims of negligent maintenance, Puerto Rico law imposes liability only in situations involving dangerous conditions that defendant knew or should have known about. <u>Cotto</u>, 16 P.R. Offic. Trans. at 793-94, 116 P.R. Dec. 644. (citations omitted). In <u>Cotto</u>, a shopper fell while approaching a department store stairway. <u>Cotto</u>, 16 P.R. Offic. Trans. at 791-93. She said the floor was slippery, but did not present any facts about what created the alleged slipperiness. <u>Id.</u> As such, the Puerto Rico Supreme Court concluded there was no evidence of a dangerous condition on the premises. <u>Id.</u> at 795. Without a dangerous condition, defendant did not breach of the duty of care. <u>Id.</u>; see also <u>Mas</u>, 984 F.3d at 530 (applying <u>Cotto</u> and affirming dismissal in a spilled milk slip-and-fall case because there was insufficient evidence defendant knew or should have known about the spilled milk that caused plaintiff's fall).

Here, as in <u>Cotto</u>, the record reveals no evidence of a dangerous condition on the premises. Plaintiff alleges the escalator area was dark, confusing, and lacking proper warning signs. (Docket No. 116, at 4.) However, Plaintiff does not support these allegations with any admissible evidence. The result does not identify where the incident occurred. <u>Id.</u> After returning to the airport and viewing five different escalators, Plaintiff could not identify the location where the incident occurred. <u>Id.</u> at 8-9. Similarly, Plaintiff has not presented evidence of Defendants' failure to

---

evidence of a dangerous condition on the premises. Likewise, the allegation that the area was 'confusing' does not move the ball forward in Plaintiff's efforts to establish breach.

10

maintain the escalator area that could have contributed to the alleged darkness. See Santiago v. American Airlines, Inc., 840 F. Supp. 2d 500, 505-06 (D.P.R. 2012) (granting a motion to dismiss where plaintiff failed to plead facts that the area where plaintiff slipped constituted a dangerous condition that defendant knew or should have known about). As a result, there is no evidence from which a jury could reasonably infer Defendants' act or omission contributed to the alleged darkness in the escalator hallway. Therefore, a negligent maintenance theory cannot establish Defendants breached the duty of care, since Plaintiff has not put forth evidence that the alleged darkness in the escalator area was the type of dangerous condition that Defendants should have prevented.

        ii. Negligent Design

To establish breach by negligent design, Plaintiff must show the property was unsafe from conception. Vazquez-Filippetti, 504 F.3d at 50. This requires evidence of "the specific duty or standard of care applicable to the design of the product or property at issue." Id. To show breach, Plaintiff must "present evidence, usually through an expert witness, as to the relevant standard of care for the design and the way(s) in which the defendant's design fell below that standard." Id. (citing Prado Alvarez v. R.J. Reynolds Tobacco Co., 313 F. Supp. 2d 61, 73 (D.P.R. 2004), aff'd, 405 F.3d 36 (1st Cir. 2005)).

Plaintiff has failed to present sufficient evidence from which a reasonable jury could find breach under a negligent design theory. Without identifying where the incident occurred, Plaintiff cannot identify the escalator, the hallway, or the design of either edifice.[4] Instead, Plaintiff argues that all escalators are inherently dangerous. This position plainly lacks legal support. Moreover,

---

[4] Plaintiff seems to think that uncertainty about precise escalator where the event occurred is somehow favorable to her case against Defendants. (See Docket No. 116, 9-10.) She is mistaken.

11

**Civil No. 14-1484 (GAG)**

even if legal authority supported the proposition that escalators breach the duty of care under a negligent design theory (essentially imposing strict liability for escalator accidents), this point is merely academic because Plaintiff does not allege the escalator caused her fall.

      c. <u>Proximate Cause</u>

The third element of negligence under Article 1802 of the Puerto Rico Civil Code is proximate cause. To establish this element, a plaintiff must demonstrate "a sufficient causal nexus between the injury and defendant's act or omission." <u>Vazquez-Filippetti</u>, 504 F.3d at 49 (citing <u>Torres v. Kmart Corp.</u>, 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002) (citations omitted)). Puerto Rico law makes the foreseeability of a plaintiff's injury central to the proximate cause inquiry. <u>Id.</u> "No one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable" unless otherwise provided by law. P.R. LAWS ANN. tit. 31, § 3022. In the context of a tort claim, foreseeability requires that the injury "could have been avoided had the defendant acted with due care." <u>Woods-Leber</u>, 124 F.3d at 52.

Here, Plaintiff must present evidence establishing a sufficient causal nexus between her injury and Defendants' act or omission. See <u>Vazquez-Filippetti</u>, 504 F.3d at 49. The most important fact in this case is undisputed: the female passenger caused Plaintiff's fall on the escalator. (Docket Nos. 111-8, at 97; 112, ¶ 32.) Given that undisputed fact, the question is whether sufficient facts establish a causal nexus between Defendants' act or omission and the female passenger's fall (which undisputedly caused Plaintiff's fall). Cutting to the chase, Plaintiff has not asserted any facts to link the condition of escalator area to the female passenger's fall.

Plaintiff argues that the airport hallway "conditions [were] the cause of the fall of the other passenger, Juana E. Cabrera, that caused plaintiff to fall. That was the proximate cause that resulted in the damages to Plaintiff." (Docket No. 116, at 5.) In describing the condition of the airport

12

**Civil No. 14-1484 (GAG)**

hallway and escalator area, Plaintiff provides three explanations why the female passenger fell: "she definitely needed assistance," "she didn't have enough instruction," and "there was not enough lighting." (Docket Nos. 111-8, at 78-79, 85; 117, at 5.) However, Plaintiff's explanations of the female passenger's fall are not based on personal knowledge, and as a result, do not constitute admissible evidence.

To be admissible, testimony must be based on firsthand knowledge. FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Plaintiff did not see what caused the female passenger's fall. (Docket No. 112, ¶ 25.) After the incident, Plaintiff did not ask the female passenger what made her fall. Id. ¶¶ 18, 20, 26. During discovery in this case, Plaintiff did not take the female passenger's deposition or obtain a written statement. Finally, Plaintiff has not pointed to any other evidence to show what caused the female passenger to fall on the escalator.

Thus, the record reveals no evidence connecting the female passenger's fall to any act or omission by Defendants. Attributing the cause of the female passenger's fall to any of the three explanations Plaintiff provides—darkness, insufficient assistance, or inadequate warning signs—would require entirely unsupported speculation. Summary judgment is appropriate where plaintiff's case rests upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera, 440 F.3d at 21 (quoting Benoit, 331 F.3d at 173). Even if the record contained sufficient evidence for a jury to conclude Defendants breached the duty of care, Plaintiff's claim fails because there is no evidence from which a reasonably jury could find proximate cause.

Altogether, Plaintiff seeks to hold Defendants responsible for the injuries she suffered when a female passenger fell on her while Plaintiff was stepping onto an airport escalator. However, Plaintiff has not presented evidence connecting any act or omission by Defendants to the female

13

**Civil No. 14-1484 (GAG)**

passenger's escalator fall. As a result, "even though an owner or occupier of commercial premises must exercise due care for the safety of its patrons, it is not liable in tort without a showing of fault." Calderon-Ortega, 753 F.3d at 254 (citing Vázquez-Filippetti, 504 F.3d at 49). Viewing the record in Plaintiff's favor, there is no genuine factual dispute as to Defendants' breach of the duty of care or the causal nexus between Defendants' conduct and Plaintiff's injury. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's Article 1802 negligence claim.

**V. Conclusion**

For the reasons stated above, the Court **GRANTS** Defendants' motion for summary judgment at Docket No. 111. Plaintiff's claims are hereby **DISMISSED with prejudice**. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 26th day of April, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge